## STATES S. S. CO. v. BERGLANN.
No. 6069.

Circuit Court of Appeals, Ninth Circuit.
June 9, 1930.

Wood, Montague & Matthiessen and Erskine Wood, all of Portland, Or., for appellant.

Lord & Moulton, of Portland, Or., for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

KERRIGAN, District Judge.

This was an action at law, brought by Berglann, a seaman, under section 33 of the Merchant Marine Act of 1920 (46 USCA § 688), for personal injuries received by him on the steamship Illinois. The owners of the Illinois appeal from a judgment for plaintiff.

The Illinois is a steel cargo steamer of the three-island type with the usual well decks. The crew's quarters are aft under the poop-deck and on the same level as the well deck. The galley is amidship. At the time when plaintiff's injuries occurred, the vessel was four days out from Japan, homeward bound. The well deck was empty of cargo. For several days previously the water pipes in the crew's quarters had been frozen, so that the men had been in the habit of going forward to the galley to get fresh water in buckets, crossing the well deck for this purpose. On the day in question, Berglann, having completed his day's work, went forward to the galley to get a bucket of warm water to wash up with. At that time the wind and sea were striking the vessel on her port side about abeam, and occasional seas were breaking over the well deck from that side. Berglann secured the water and descended to the well deck, immediately preceded by another seaman who had been on the same errand. The two had practically completed their journey across the well deck, when Berglann saw a sea about to break over the deck and shouted to the man ahead of him to hurry. The latter had just reached the heavy iron door leading from the well deck into the crew's quarters and opened it. He succeeded in entering. Berglann, however, as the sea broke, seized the handles of the door. His left hand held a handle on the inner side of the door, with the result that, when the sea struck the open door, it slammed shut, jamming Berglann's arm between the door and its casing, and causing the injuries complained of.

Three grounds of negligence are alleged: First, failure to have a manrope or life line strung along the well deck for the protection of seamen crossing; second, negligent delay on the part of the seaman preceding plaintiff across the deck in entering the door on the well deck, blocking plaintiff's escape from the sea; third, permitting a scuttle door on top of the poop deck which would afford plaintiff an alternative and safer way of entering the crew's quarters to become out of repair so that it had to be lashed shut and could not be used to avoid danger. The chief question on this appeal is as to the assumption of risk of injury from these various conditions by his crossing the well deck as he did.

Appellant contends that the risks assumed by plaintiff are to be measured by the rule recently declared by the Supreme Court in Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7, 49 S. Ct. 202, 204, 73 L. Ed. 578, as to railroad employees, namely, that the employee assumes, "when obvious or fully known and appreciated, * * * the extraordinary risks and those due to negligence of his employer and fellow employees." However, that portion of section 33 of the Merchant Marine Act of 1920 (46 USCA § 688), which provides, "in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable," does not require the definition of assumption of risk by a seaman in the same terms used with reference to railway employees. The doctrine of assumption of risk has long been applied to the cases of seamen; its application has been made with reference to the peculiar nature of the seaman's employment, his subjection to orders, and inability to abandon his employment during a voyage. There is nothing in the section above quoted intimating that any change is to be made in this regard. Panama R. Co. v. Johnson (C. C. A.) 289 F. 964.

Looking to the plaintiff's evidence in this case, it appears that he crossed the well deck for a purpose arising out of his employment, to get water to wash with after the day's work. See Zurich General Accident & Liability Ins. Co. v. Brunson (C. C. A.) 15 F. (2d) 906; Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 42 S. Ct. 475, 66 L. Ed. 927. The employment of a seaman includes not only the performance of the physical tasks required of him, but also includes the performance of such ordinary tasks for his own comfort and convenience as are incident to and necessarily connected with the employment. The court submitted to the jury the question as to whether plaintiff was engaged in such a task at the time of his injury.

458

In performing such tasks a seaman assumes all of the ordinary risks of his employment, but, because he cannot quit the ship nor control the actions or orders of the ship's officers, he does not assume the risks of negligent acts of those in charge of the ship whereby his place of work as a seaman is made unsafe; nor does he assume the risk of failure of those in charge of the ship to take such precautions as the perils of the sea may render necessary and reasonable. Panama R. Co. v. Johnson (C. C. A.) 289 F. 964; Zinnel v. United States Shipping Board, etc. (C. C. A.) 10 F.(2d) 47; The Colusa (C. C. A.) 248 F. 21. The instructions of the trial court upon this point were full, comprehensive, and correct, and included an instruction, applicable to the issue raised by defendant's evidence that plaintiff crossed the well deck at the time of his injury contrary to orders, to the effect that the plaintiff would assume the risk if he was found to have crossed the deck having been forbidden to do so.

It was the theory of plaintiff's case that all of the acts of negligence charged operated together in causing his injuries, in that the defects in equipment alleged made his route across the well deck unreasonably unsafe, while the negligence of his fellow seaman cut off his only hope of escape from the sea which came aboard. The evidence as to the conditions actually existing was in conflict as to all three of the acts of negligence charged, and the court properly submitted all of them to the jury.

Other errors assigned refer to the admission of certain evidence and to an alleged misconduct of counsel in argument.

Finding no error in the rulings of the court in these matters, the judgment is affirmed.